Your Honors, may it please the Court, Ina Lipkin on behalf of the Petitioner, this case comes before you following the denial by the Board of Immigration Appeals of the Immigration Judge's decision regarding Mr. Lal's asylum claim. I think the main two issues before the Court today are whether the Petitioner can, whether it's reasonable for Petitioner to safely relocate within India. And secondly, whether the Indian government was willing and able to protect him from harm perpetuated by members of a minority coalition government called the Congress Party. Let me stop you for a second. So you're waiving or giving up your argument that, under Kat, because your client failed to exhaust and therefore we don't have jurisdiction. You're conceding that point. Yes.  Thank you. Yes, ma'am. Yes. Can I ask you, just since we have a common background here on this, you're familiar with the case of Singh v. Whitaker? One of my favorites. I'm sure that, at least from my perspective as the author of the opinion, think this is the key case for you here. And I guess what I want to know is, in that case, we said that the BIA and the IJ failed to provide an individualized analysis of the risks of relocation to the Petitioner in that case. What is required by Singh that did not occur in this case? I think one of the main issues here that the judge failed to consider, and I think that's irrespective of the fact that the case was decided several years before Singh, and that is that there is a complexity in the multi-party parliamentary system in India, especially in minority parties. Here in Haryana, it's a little bit different than in neighboring Punjab. The Sikh case arose from problems with the same minority government, the Congress Party, but in the Punjab here, we have similar issues, but in neighboring Haryana. And I think one of the issues that the judge relied upon was that by the time the Petitioner had arrived to the United States and filed his claim, new elections had But that was not dispositive because something that the judge failed to consider was that the minority governments work together in coalitions with the party that holds majority power. At the time of the hearing, the BJP party, which also happens to be the centrally ruling party in all of India and continues to be so, created these alliances with other parties, including the Congress Party. So, excuse me, that was in the evidence in the record? That point was in the record somewhere. I believe that in closing argument, counsel for Petitioner had argued that the Congress Party continues to maintain some hold of power in Haryana as a representative of government, the Congress Party, whatever actions it takes. But it wouldn't be in Haryana itself, it would be in other parts of India. No, in Haryana, they still held seats. I understand that in Haryana. But the issue is whether or not your client can relocate in other parts of India. Correct. But the Congress Party, as I stated earlier, has a presence in the Punjab and in many other states in India. And that was argued, I think, in closing by the counsel. Whether or not they have this coalition that you're talking about in other areas of that your client comes from. Well, when a party in India doesn't have the majority seats but has a certain number of seats, they are forced to do coalitions with the majority holding power. In fact, I think Judge Wu's question is, is that in the record of this case? Because it struck me that those were developments that occurred after this case was submitted. Am I correct on that? Well, the Petitioner's Council had submitted several hundred pages of background documents which explained or pointed to the hold that the Congress Party has, not just in Haryana, but through India. There were generalized background documents that referred to. But if I may make a point tangent to this, is that the immigration judge found that the petitioner was not even persecuted necessarily by the government because the Congress Party was, in the judge's terms, not the entity persecuting the petitioner. Rather, it's some of its members were. But if the Congress Party represents government, its members represents the party, and therefore, ergo, the government persecuted the petitioner, and thus, relocation is not reasonable. Let me ask you one thing. Do you want to reserve any time? I know we're not there yet, but when we get there, do you want to reserve any time? I'll reserve maybe 90 seconds. Nine minutes? Oh, 90 seconds. Oh, God, OK, I was going to say one minute. But I wouldn't be doing my job nine minutes. Well, let me get to, from my perspective, the real issue here. Our case law and the regulations don't require that the government prove that there's absolutely no risk anywhere. What they're required to do is to do an individualized analysis that, based upon the circumstances of the petitioner, past persecution who was involved, the abilities of the petitioner to kind of blend in and so on. And at the end of the day, it's not a perfect situation. The question is, basically, is there a good likelihood he could settle there without a problem? From my perspective, the IJ and the BIA did that in accordance, Singh wasn't around then, Singh versus Whittaker, but they did that. What am I missing? Well, as I believe that both the IJ and the board failed to properly analyze the fact that the petitioner credibly asserted that the persecution stemmed from the government itself. OK, therefore, she's not required, she's not required to show that the persecutor cannot be controlled. And therefore, there's that presumption that relocation is not reasonable when the petitioner was involved. The presumption that if the petitioner says something and the government refutes it, and there are several other things, does the petitioner win no matter what the government says, if he asserts certain things? Or is there basically a balancing here that the IJ and the BIA have to do? Certainly, there's a balance, but the petitioner did, first of all, the petitioner was found to have testified credibly. So we've got to give his testimony full weight. That testimony indicated that he would continue to support and work for the INLD party, which the IJ dismissed. That's not something that should have been done under that. Actually, in Singh versus Whittaker, one of the things we criticized the BIA and the IJ before was that they did not credit the fact that Singh was going to continue to propagandize for his party, his fan party in that case. In this case, they did take it into account. I guess what I'm wrestling with, it seems like you're saying, okay, the Congress party is sort of kind of involved in there, and they have in the past persecuted certain people, and that controls. That's not my understanding of our case law. It is that we've got a variety of things to consider, and the BIA and the IJ have to consider all those things. Is that right? Yes, Your Honor, balancing the fact that the Congress party still controls, even to this day, a minority bloc in Haryana. And what I was trying to say is that even though the petitioner was found credible, the IJ improperly discounted his credible testimony, he would continue participating in the party and engender harm. Okay. Do you want to save the rest of your time? Yes, thank you. Very well. Let's hear from the government. Good morning. May it please the court, Aaron Nelson for the respondent, the Attorney General. Your Honors, I would submit to the court that although the agency decisions under review here were issued before Singh v. Whitaker, that the immigration judge did make the very assessment that Singh v. Whitaker asked be made, an individualized assessment, taking into account all the of the circumstances, and also conditioned or bound by the persons or entities who persecuted the applicant and the nature and extent of past persecution. And with that in mind... Let me stop you for a second. Are you familiar with these two cases which are unpublished with the Ninth Circuit cases? One is Singh v. Barr, 789, Feb. Apt. 54. It's a 2019 case that did consider Whitaker. And also another one, Singh v. Garland. It's a very recent case, 2022 Westlaw, 1514658. Are you familiar with either of those two cases? Because those two cases did consider this particular issue as to the minority, an individual in the minority party, saying that he's going to proselytize in another location. And in those two situations, the courts came down exactly the opposite of each other on very similar facts. How do you respond to that? Well, I would say that I believe that I perused these cases last week in preparation. I don't have them before me, but my response is that these cases about a relocation analysis turn on the facts of the case. And that is why we believe that the case at hand is much different than, for example, Singh v. Whitaker. The case at hand involves private actors who attacked and beat this petitioner twice in 2013 and did so immediately after a large scale protest and activities and event in Haryana province. And so where we have in Singh v. Whitaker, we have the detention, long term detention, arrest, beatings, houndings, and we have a finding there that the board improperly found that he could avoid future persecution by being silent. We have nothing like that here. We have two instances in 2013 of private actors attacking him. And so, you know, mindful of the guidance that the court put forth in Singh v. Whitaker, the question here, I believe, there's two questions. What will he do when he relocates? And what will those who persecuted him do in response? And the answer to the first question is everybody accepts he's going to prophesize again. So that's a given. And he testified credibly about that. Sure, absolutely. Well, I'm not sure that I'm ready to concede the first question about, you know, how is he going to proselytize? He acknowledged that the party that he bears allegiance to and that he participated in actively only exists in Haryana state. So India, with one point four billion people in twenty nine states, only sees the northwestern state of India. So he's so he conceded that he will not be able to, if he relocates to one of the other twenty eight states, partake in large scale protests or blood drives or all of the things that brought him to the attention of his persecutors in Haryana. He did be absolutely right. He said that I will. So what you're saying is that if he starts out small, he can't make it. It doesn't work because he's only a small fry. Is that what you're saying? Maybe he's a very persuasive. He might be very persuasive leader for his cause, for his party. I mean, he might be. He did say that he would continue to inspire people. So I think he would be he would be a voice in the wilderness in another state of India. But, you know, to go from there to say that somehow a series of things will happen is a he will that he cannot avoid future persecution by relocation. But that's the first place. But did the PIA and the IJ conduct this type of analysis and this type of detail, which is required under Singh versus Whittaker? I believe the record is fifty eight and fifty nine. The IJ's relocation analysis does do that. Now, we may agree. We may disagree with the immigration judge, but the immigration judge said that it's just it's not reasonable that you're going to come in the crosshairs of Congress party members because there's not going to be an occasion like there was when you were walking home from a large scale protest maligning the Congress party in the midst of a heated election in the only state where the lockdown has any presence whatsoever. The immigration said that's just not you know, I'm sure that he believes that the Congress party can reach him wherever in this country of one point four billion people. But a dispassionate observer and fact finder like the immigration judge said it's not reasonable that that's going to happen. And it's not and it's not reasonable because of the fact that this is a localized conflict. Let me let me let me get your help on this balancing aspect. As my colleague, Judge Lewis, pointed out, he's indicated he's going to continue to proselytize in the Singh versus Whittaker. They didn't do that. They didn't even talk about it, even though he was going to do that. So from at least from my perspective, each of the issues required for individualization that we set forth in Singh versus Whittaker are met here. But the question to me is he was persecuted in the past. So there's something of a presumption involved. And how does the government overcome the presumption by doing what the IJ and the BIA did here, which is to say that he said he's going to proselytize? We get that. We got these all these all these other things, but then went through and analyzed why things are different in this particular state, why it's different in terms of his education, in terms of all the other things that he could do, and ultimately concluded that relying on all those things and doing a balancing test that he could reasonably relocate. Is that the test, the balancing basically? I like how you formulated it, and I'll accept that as the balancing test for sure. And again, these these cases on relocation turn on the facts of each case. But with respect to the petitioner, here's a sort of innate ability to restart his life. He has a college degree. He speaks English. He speaks Hindi. He was able to get himself out of India to South America, to Central America, to the in terms of restarting his life, contrary to well, I would add parenthetically here that when he was asked why he couldn't relocate, he said, well, there are three reasons. The second and the third merged into one. But the first reason he said was, I don't know anybody outside of Haryana. And I would say that that's just you know, that's not good enough in a case of an individual who brought himself halfway around the world to restart his life that he start and restart and relocate to another state within India. I'm sorry, your honor, what what was another aspect of your question about the balancing? No, I think you covered my point is that when all of the things that we ask be done in Singh versus Whitaker are done in the sense that they haven't for they factors involved. And when they do that, they take the presumption, but they have to balance it. And in this case, they weighed it and concluded that he could safely relocate. And I just want to know whether you agreed with that. Indeed, indeed, we do agree with that. And again, you know, at this stage at the circuit court, I would I would respectfully submit that to you know, that balancing is a weighing of the evidence that what we have here is not enough to overcome. Let me ask you, counsel, counsel, what's the difference between the facts of this case and the facts of Singh versus Garland? Your honor, I don't have it fresh on the on the to my memory in order to respond. It seems to me there's little to none, except that the minority party was different. In other words, in the Singh versus Garland, it was the man party. And here it's a different minority party, but it's basically a minority party, etc. Well, what I would say, your honor, is that the man party, the record that we have before us from the Department of State reports shows that Congress party members do did engage for the year in question, engage in attacks against man party members outside of the Punjab, whereas nothing in the State Department record here or in the Australian article on the Haryana conflict. Nothing here suggests or hints that Congress party members look for Lakhdar party members once they leave Haryana. And I see that my time is about to end. Do either of my colleagues have additional questions for the government? No, I don't. Okay. Do you have any, Judge Thomas? Very well. No, thank you. Okay. So petitioners, counsel has a little rebuttal time. Please proceed. Yes, thank you. Just like in Singh v. Whitaker, where the man party was more or less singular to the area of the Punjab and did not widely operate outside the Punjab, in the same vein, the INLD party is also maybe particular to Haryana, but the facts then reflect the same concerns that the court addressed in Singh v. Punjab, a person belonging to that party would face a fear of future persecution. Well, it said that you had to analyze it, not that they necessarily would, correct? But the fact that they're both small parties... Here's my question for you. The IJ says on 59 that there was no evidence in the record that the Congress party searches for or attacks Lakhdar members who leave Haryana for another region, and that the respondent testified that the only instance of harm he's aware of is between the Congress party and the Lakhdar party that occurred in Haryana. So in this case, the IJ actually did look at some evidence outside Haryana. And so the petitioner hadn't met his burden, really. As we argued on page 27 of the brief, Exhibit 4, part of the background document submission at 261-262 clearly describes incidents of the Congress party and INLD conflict and attacks on Lakhdar party members. I also want to just last point out that... Counsel, forgive me. We've used up your rebuttal time. I'm sure what you would have to say would be wonderful, and we will take it as such. But your time is up. So the case just argued, Lahl versus Garland, is submitted. And we thank both counsel for your argument. Thank you, Mr. Nelson. Thank you, Court. I'm Mr. Smith. I was talking to the trial attorney. But yes, you're... Oh, sorry about that. Definitely. Have a great day, everyone. Thank you very much. Okay.
judges: THOMAS, SMITH, Wu